Thank you, Your Honor. Eric Brunstad on behalf of Travelers. I'm in an unusual position of feeling like I'm just extending a conversation that was just had in the prior case. I think that there are three points that I'd really like to make today. The first point begins with there is no provision of the Bankruptcy Code which even remotely purports to disallow a claim for attorney's fees because the issues litigated involve Federal bankruptcy issues. Now, where there's no provision of the Bankruptcy Code that purports to deny a claim for attorney's fees, the Supreme Court teaches that Federal courts have no authority to create a rule of disallowance. That's the Nolan case and the CF&I case which we cite in our briefs. So your only way out of nice sacred law is to find a clash with the Supreme Court case? There are several clashes, Your Honor. First, there are. Well, one or more. It's the same question, Judge Rustavi, asking that we have controlling precedent, and you say our precedent conflicts with Supreme Court cases, but those cases are before our latest case. No, Your Honor. No, Judge Ronhart. The Nolan and CF&I case comes after Fobian, and the O'Melveny case comes after the last one of the series of Fobian cases which follows the Fobian rule. Now, also, Your Honor, in Fobian and Renfro, Hashemi and Baroff, the panels did not discuss the Supreme Court's prior decision in Security Pacific, and it appears not to have been argued to the Court. Also, Nolan and CF&I are not discussed in the decisions before that, as mentioned, that follow a Fobian. And O'Melveny comes later. When you look at Nolan and CF&I, the Supreme Court unequivocally states Federal courts cannot categorically create rules of disallowance or priority claims. The Fobian line of cases conflicts irreconcilably with those two Supreme Court precedents and also the Supreme Court's decision in O'Melveny, which says, which reiterated the rule, there is no general Federal common law. And also reiterated with the rule, to avoid Federal courts becoming awash in a sea of Federal common law rules, we don't fill the gaps of the Bankruptcy Code or other statutory regimes like FIREA. In O'Melveny, FIREA was the receivership statutes dealing with bankrupt banks, essentially. We don't fill the gaps with Federal common law rule. We apply the State court rules. Can you explain to me how this is a disallowance of a claim, that the claim that was filed was not for attorney's fees? Yes, it was, Your Honor. First, there was a proof of claim in which travelers set forth its rights, very simply. If we ever have to make payment on the bond, we have rights of reimbursement, rights of subrogation. Then we amended our proof of claim, which the Bankruptcy Court specifically allowed us to do, to add our claim for attorney's fees. Now, our right to attorney's fees is contractual. It arises out of a pre-bankruptcy indemnity agreement. As of the date of the filing, our right to attorney's fees was contingent. Travelers had not yet incurred them. But because it incurred them during the course of the bankruptcy case, properly fell within the ambit of our amended proof of claim, and it was a right to payment. The definition of claim, Judge Rustani, is any right to payment, whether contingent or fixed, liquidated or unliquidated. The right to attorney's fees clearly falls within the definition of a claim under Section 1015 of the Bankruptcy Code. You must file a proof of claim. You can amend a proof of claim during the course of the bankruptcy case when the contingency incurred during the case. And this Court and other courts of appeals has recognized that when you incur the attorney's fees during the course of a case, if it relates back to a pre-petition, pre-bankruptcy contract, it is properly part of your claim and may be asserted in the bankruptcy case. But if we adopt your view, then every creditor who has a clause like that under state law, even if the creditor doesn't prevail in bankruptcy, is going to be entitled to attorney's fees, which would completely eat up any, all of the estates, all the bankruptcy estates in most cases. I mean, you didn't, you weren't the prevailing party. You didn't win anything in the bankruptcy court. Well, Your Honor, assurity, the indemnity contract, remember, the right to attorney's fees is designed to any lost assurance. Right, right. I just understand what it says. I'm just talking about the practical effect of your position. Well, already, Your Honor. Every creditor will have that right, usually under state law, right? Well, already, Your Honor, if what you're litigating is state law issues, you have a claim for attorney's fees. Even if they're incurred after the bankruptcy has commenced as part of your claim, that's what this Court decided in the Hartman case. So already attorney's fees are a legitimate claim and they do become part of the bankruptcy process. They're just a regular claim like any other debt the debtor has. They can be discharged in bankruptcy. The reason why it's important in this case is that PG&E was paying all of its claims 100 cents on the dollar. What PG&E is trying to do is say, oh, with respect to this particular claim, this particular debt that we owe, we don't want to pay it because it involved litigation of bankruptcy issues. But it could be treated just like any other claim, just like any other debt. If the debtor has no assets and it's an unsecured claim, it will be discharged and there will be no money paid to the creditor on the claim. If the debtor is paying all claims in full like PG&E was, then the creditor is entitled to its fees. This simply falls right into the line of every other type of claim in bankruptcy we treated just like all other claims. Now, I think if Your Honor thinks about this illustration, suppose two parties are negotiating a contractual fee clause and it involves an admiralty issue. The contract would be valid under State law. This Court says so in Stockton. And then just because the parties end up litigating admiralty issues doesn't mean that the claim for attorneys' fees is denied or disallowed. Nothing in admiralty law creates this rule that says just because you litigate Federal admiralty issues, your claim must be disallowed or somehow disregarded. No, it's completely a creature of State law. Suppose we're litigating we have a loss contract that says if we ever get involved in litigating patent issues, one party will bear the attorneys' fees. Well, the fact that we're litigating patent issues doesn't mean that, oh, all of a sudden the Federal rule of preemption kicks in and Federal law has to authorize the attorney fee provision in order for it to be valid. No. The rule is that if it's valid under State law, then the allocation is respected contractually. So the fact that there are Federal law – Federal issues that are being litigated is really of no moment in the analysis. As the Supreme Court made plain in Security Pacific, there's nothing about bankruptcy law that renders these claims suspect or that makes them invalid. And this Court said exactly the same thing in Hart – in Hart – in Hart – the Hartman case, which we cite. Quote, There is nothing in the character of an agreement to pay attorney fees that renders it suspect in bankruptcy. If the agreement is valid under local law, a claim based upon it is provable in bankruptcy if it satisfies the requirements of the Bankruptcy Act. Now, the Bankruptcy Act, Congress could – the Supreme Court noted in Security Pacific – Congress could have created a rule which says, oh, no, you don't get your attorney fees in bankruptcy cases. But it hasn't. It hasn't. So that's – So your position is that you can take – because your claim survived bankruptcy, your right to indemnity. The PG&E did not default at all on your bond. It survived bankruptcy. You chose to litigate these issues in Bankruptcy Court in order to raise the question about whether it survived it. And even though you didn't prevail on that, you've – Your Honor, I guess I would say – I would characterize it completely differently. PG&E filed for bankruptcy. We didn't cause them to file for bankruptcy. They did. In bankruptcy, the default rule is if you don't move to protect your rights, you lose them. They can be discharged. We filed a proof of claim, and the excerpts of record 005 say – it's very clear in our proof of claim exactly what we were doing. We just said we have these rights. We want everybody to know about them. If we ever have to make payment on our $100 million bond, we have rights of subrogation, rights of indemnity, rights of reimbursement. We just took ordinary steps that a creditor takes in bankruptcy. Filed a proof of claim. When it came time to the plan, negotiating the plan, we said you need to do certain things under this plan. You need to render the workers' compensation claims, which we've assured under our bond, unimpaired. The Bankruptcy Court agreed. PG&E agreed. And it put that in its plan. That was the right thing to do. We brought it up. We negotiated it. We had it put in. It was for everybody's best interest that it be done that way. You don't want the workers being classified as in a lump sum basis, because then they get a lump sum distribution rather than their periodic workers' compensation benefits, which causes problems. We wanted their treatment to be specified, because if we ever have to make payment in the future on the bond, we would step into their rights. If their rights aren't specified under the plan, then they get to be discharged under Section 1141d. So we took the ordinary steps that we need to do. And the real question is, is why did PG&E object to our proof of claim? There was no reason whatsoever for PG&E to have objected to our proof of claim. All we said in our proof of claim is if we ever have to make payment, we have these rights. They went on the offensive, and they said in their objection to our proof of claim, our subrogation rights, quote, are not valid, close quote. That's what they said in their objection. They forced us to defend our rights. We didn't commence a declaratory judgment action saying what our rights are. They objected to our proof of claim. So we were in the position where we were being put up to explaining our rights and trying to make sure that they were protected in bankruptcy. And then we – and incurred attorneys' fees as a result. We incurred a loss as a result. Now, then we negotiated a stipulation. And the stipulation very clearly says, one, we're not – we never asserted a claim for money. We hadn't paid any yet. But if, in fact, we have to pay money in the future, we can have our reimbursement claim honored. Secondly, our rights of subrogation are unaffected. They're preserved. Third, if we are subrogated, we get whatever priority right the workers get. So the stipulation we ended up negotiating, which resolved all of this, preserved our rights just as we had set them out and hoped they would be preserved when we filed the proof of claim. So we were not in the bankruptcy court litigating things unnecessarily. We were defending our rights and moving to protect them as a creditor has to in bankruptcy. Otherwise, they get discharged. Otherwise, they get basically eviscerated. So you could say, yes, we were the prevailing party. We ended up settling. Settling, but we have a loss. And this isn't a prevailing the party concept, Your Honor, Judge Thomas. This is a, do we have a right to payment of our attorney's fees under our prepetition contract? Now, the bankruptcy court did not reach that issue. It involves questions of fact. It did not get to that. The bankruptcy court decided one issue only, which is, as a matter of law, our claims for attorney's fees disallowed in bankruptcy on the authority of Fobian. And the bankruptcy court said, I have to follow Fobian. And the district court said the same thing. But Fobian is completely wrong. Fobian says. Well, I understand your argument so far. But now let's get back to Judge Rustani's question. We have to deal with Filgin. You asked for initial hearing on Bonk, which was denied. Yes. And we as a three-judge panel are bound by circuit press unless there's intervening Supreme Court. And all you have is Mulvaney, which is not on point with respect to the bankruptcy court. So. Yes, Your Honor. But in the case of Miller, the court determined on Bonk. Before you urge us to overrule Fobian, which we're going to be reluctant to do, I think. Yes. Tell me if you think you can distinguish Fobian. Yes, Your Honor. I think you could distinguish Fobian in this case. I think you could distinguish Fobian because Fobian itself recognized an exception. Fobian says, but you can get your attorney's fees notwithstanding the general rule in Fobian in cases of harassment or bad faith. And I think in this case, there was absolutely no reason for us to have incurred the attorney's fees that we were litigating in defending against the objection to our proof of claim. Because there was no reason to even object to our proof of claim. And, again, the answer, the question that's never been answered is why did they object to our proof of claim? There was absolutely no need to do it. We had to defend. Did you assert this argument of bad faith in the bankruptcy court? And we cited the Siegel case, which we rely on, which is the same kind of a – same kind of proposition. And we briefed that to this Court as well. Yes, Your Honor. We never – the bankruptcy court never ruled on it, Your Honor. We never got that far. The bankruptcy court simply said, as a matter of circuit law, you cannot – you cannot get these attorney's fees. So it would have to go back to the bankruptcy court to decide whether there was bad faith. It would have to be remanded. Bad faith or harassment, it's not – the exception is not really very well developed. The Siegel case, I think, is the most developed application. There, the debtor commenced litigation after bankruptcy, and the court of appeals in the Siegel – this Court said in the Siegel case, where the debtor essentially takes the offensive and starts litigating, then it basically resurrects an equity, your right to attorney's fees, and you get them. So there is a Siegel exception. Are you – are you requesting a remand on the Siegel issue rather than having a decision and then seeking an unbanked hearing? First and foremost, Your Honor, I am requesting that this panel not follow Fobian because of the clear mandate of the Supreme Court in Noland and CF&I. I don't think the Supreme Court could be any clearer when it says Federal courts cannot categorically create rules of disallowance in bankruptcy. I think this panel and the Court is bound by the modes of analysis in Noland and CF&I. I think the Miller case gives this panel authority to say we can't follow Fobian. We must follow the Supreme Court's mandate in Noland and CF&I. And I think that the O'Melveny case deals with a statutory regime just like bankruptcy. Let's assume that we don't agree with that and don't overrule Fobian on the theory that there is intervening Supreme Court law. Assume we were to say we're bound by Fobian. Then would you seek a remand under Siegel or would you prefer or would you request that we then issue that decision so you can ask the full Court to go unbanked? I think that Your Honor should decide the main argument which we have asked, the Fobian question. And Your Honor should decide that. If Your Honor rules against me on the Fobian, I would still request that Your Honor do the analysis that the Court normally would do. And then addressing the second issue on Siegel, then the Court could address the Siegel argument and say this wasn't decided in remand. That would still preserve the decision for unbank review. It would preserve the delay, probably. Well, Your Honor, there's no prejudice to the other side. No, no. It's your option, certainly. I'm just asking what you're requesting. So you would request that if we conclude that we're bound by Fobian, that then we proceed to the next issue and assuming the record justifies it, you would want a remand under Siegel? That would be correct, Your Honor. It would be a reversal and remand on that issue. Recognizing that the district court didn't address it and the bankruptcy court didn't really address it either, even though we did raise it. I would like to reserve the balance of my time for rebuttal, if I may. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. Gary Kaplan from the Howard Rice Firm for Pacific Gas and Electric Company, the appellee. First, let me touch upon an issue that came up at the end of the argument with respect to the Siegel case. Let me just make very clear that, number one, this is an issue that travelers did not raise in the district court or, well, first, before this court, in the district court or in the bankruptcy court. Travelers did make the argument in the bankruptcy court and perhaps in the district court that its claims should be allowed as a matter of equity, but never claimed and argued it asserted Siegel for that proposition. Travelers, however, never claimed that there was any bad faith or harassment on the part of PG&E. And you can just examine the record for that point. And Siegel has nothing to do with bad faith or harassment, as I'm sure the Court well knows. The bad faith or harassment language is the exception language that's in Fobian, and it's progeny. But Siegel involved purely the issue of, for equitable reasons, whether a mortgagee under a mortgage with a debtor could recover its attorney's fees in a proceeding in which, after the bankruptcy, the debtor sued the bank and asserted various tort and breach of contract claims, not bankruptcy issues at all, tort and breach of contract claims. The bank won the litigation, and the bank was entitled to its attorney's fees on equitable grounds. That case did not speak of bad faith or harassment and has absolutely no relevance here. And I believe Travelers itself in its reply brief to this Court points out the well-established principle that if a particular point is not raised below, it may not be raised on appeal. And, as I said, the record is very clear that Travelers, not only to this Court, but neither to the District Court nor the Bankruptcy Court ever raised the issue or asserted bad faith or harassment. I think Travelers is boxed in today and is now not. Help me. I understand that argument. What's the normal bankruptcy way of dealing with bad faith or harassing claims? Well, again, I think it depends on the context of what the claim is. In this case, I think, you know, the – had the Court been asked to make an analysis under the Fobian line of cases, I believe that the Court probably would have found those cases don't apply here because State law issues were being litigated, not bankruptcy issues. But if, however, there had been a bankruptcy issue rather than a State law issue, I think that Fobian still would have governed, notwithstanding the fact that equitably and on State law issues, a court can award attorney's fees. But there's no precedent that I'm aware of and that Travelers has cited for the proposition that for equitable reasons, if a bankruptcy issue is involved, litigating bankruptcy is involved, that would trump the Fobian line of cases. Now, before you go on, I didn't see it in the excerpts, and they will be there, and I just didn't because this issue just occurred to me. In the bankruptcy schedules, how did you list the Traveler stat or claim? Well, Your Honor – Obviously, they got notice of it because they filed a proof of claim, but did you list it as a contingent claim or – I don't know for sure. I will tell you you listed tens of thousands of claims. Right. But I will also tell you – most likely I expect it was listed as a contingent claim. I will also tell the panelists, I'm sure it's aware, that under the Bankruptcy Code, the scheduling of a claim becomes irrelevant once a creditor files a claim. Right, but my question was, they argue that you contested their claim, and that probably only came into play if you incorrectly listed it on the schedules because then they didn't have to file the claim. It would automatically flow through. So we don't know. You can't tell us what you listed today. No, but I think the important point here, and as the Bankruptcy Court found, Travelers didn't have any bankruptcy claim to file. The Bankruptcy Court very clearly found this, that they shouldn't have filed a claim at all. And the reason is very simple. And it really led to – I'm quoting from an excerpt of record at page 328. Bankruptcy Court rules, quote, Travelers didn't have to file a proof of claim. It had no claim to file. The fact that the objections were meritorious proves that Travelers had no claim to file. The Court goes on, if you file a claim that is not meritorious, you can claim attorney's fees under any theory for defending an unmeritorious claim. And the point is this. Travelers filed two types of claims, a reimbursement claim, a subrogation claim. The reimbursement claim was disallowable under Section 502e1. Travelers acknowledged that and eventually stipulated to the complete disallowance of its reimbursement claim. The subrogation claim was disallowed under Sections 502 and 509, primarily because subrogation is not a claim at all, as Travelers itself recognizes throughout on all levels of its briefs, including before this Court at page 8 of its opening brief at Note 1, that a subrogation right is just that. It's a right, not a claim in bankruptcy. And all it is is the right to step into the shoes of someone else's claim in the event certain contingencies occur. So the fact is Travelers had no bankruptcy claim to file. And I take it in the disclosure statement, this claim or right of subrogation wasn't put in any class at all for that reason. Exactly right. You didn't propose to modify the right of subrogation or the right of indemnity, I take it. Exactly. And frankly, I'm not sure that we could have. But getting to that point, counsel makes the argument that had Travelers not asserted a subrogation right, its claim would have been discharged as a matter of bankruptcy law citing Section 1141d. Did Travelers object to the disclosure statement? It did. But it didn't object on the grounds or the disclosure statement in the plan, but not on the grounds that either of those documents purported to impair or otherwise affect its rights. It just objected to them that they didn't have enough clarity. But the fact is as a matter of bankruptcy law, Section 1141d would never arise because that section specifically provides for the disallowance or I should say discharge of claims. And again, we're back to the same point. Travelers itself acknowledges that its subrogation right is not a claim. It says it repeatedly in all its papers. And as to its reimbursement claim, it acknowledges that it should be disallowed. It did agree to its disallowance because it's disallowable clearly under 502e1b. But it appears that the bankruptcy court viewed this claim as unimpaired in any event, whatever it was, right? I'm sorry? The bankruptcy court viewed this claim as unimpaired, whatever it might say. The rights were unaffected by the bankruptcy, your proposed Chapter 11 plan, right? Yes. And in fact, the bankruptcy court observed at the hearing that Travelers makes much of the fact that in the stipulation disallowing its claims, it preserved the right to in the future assert subrogation rights and PG&E preserved the right to object thereto. The bankruptcy court observed that that provision had no legal effect, no legal substance. It would have those rights as a matter of law, even if those words were not put in the stipulation. Nothing in either the claim or the claim objection or the plan would purport to affect an asserted potential future subrogation right, right not claim, and nothing would have purported to affect PG&E's ability to potentially object to that subrogation right in the future. Getting back to I think that this appeal can be resolved essentially on two very simple procedural grounds. The court already alluded to one, which is the fact that this panel, as panels generally in the Ninth Circuit, is bound to follow Ninth Circuit precedent in the absence of an en banc hearing. And as the Court pointed out, an en banc hearing has not been granted despite Traveler's request. And Traveler itself says that this whole appeal involves one issue of law, an issue of law that it acknowledges is directly controlled by longstanding Ninth Circuit precedent that the district court and bankruptcy court relied on. Aside from that, we also believe that this Court is required to affirm on a separate procedural ground. That is, based on the applicable standard of review. This Court has recognized previously, and I'm quoting, that it will not disturb the bankruptcy court's refusal to award attorney's fees to a creditor unless the court erroneously applied the law or abused its discretion. I'm quoting, of course, from the Renfro case, 232 Fed 3rd at 693. There's an almost identical quote in the Baroff case from this Court, 105 Fed 3rd at 441. Now, because as Traveler's acknowledges, the bankruptcy court correctly applied the law, even though Traveler's believes that these authorities are wrong, they decided, does not say that the courts incorrectly applied the law, the denial of Traveler's attorney's fees is not subject to reversal unless this Court determines that the lower court abused its discretion. Now, Traveler's has not even asserted, let alone established, that the lower courts abused their discretion. Are you really making a different argument? Are you saying that if we concluded that we were free to reverse Fobian, we should still affirm? Well, I think that the lower court didn't make a mistake. I think what I'm trying to say is that even if it weren't the case, even if, for example, that the rule of procedure that requires you to follow other panels in the absence of in-bank review was not there, you would be here, you should affirm because of the standard for attorney's fees in particular. And so if, for example, the court were to ---- Isn't it really the same argument? You're saying that they followed Fobian below and they didn't make a mistake in following Fobian, but if we say they did make a mistake, well, if we say Fobian was wrong, we're changing it. But they weren't wrong when they followed it. You say we should affirm? Well, yeah, I think we'll ---- Even though we say Fobian's wrong. I think my point is even if you said, let's say you thought Fobian was wrong and you thought that in-bank review would be appropriate. No, we don't say. We say we can distinguish it. Well, okay. If you can distinguish it, then I think ---- And we can now overrule it because ---- let's say we can overrule it because of intervening Supreme Court law. In that case, I believe you'd be under the exception for overruling attorney's fees that the lower courts misapplied the law. Then we say they misapplied the law. Right. So it's really the same argument. I guess in a way it is. But I think my point was just that it's more difficult to obtain a reversal when you're talking about attorney's fees. Well, it is. But if the lower court made an error of law, then by definition it's abusive discretion. So if the court applied the wrong legal standard, I think we wouldn't apply our normal rules concerning abusive discretion on attorney's fees. I understand. So do you think Fobian was correctly decided? Absolutely. There's ---- You seemed a little tepid, so I wanted to give you a chance to express your view. The fact is there's a framework that this Court has built up over more than the last 20 years as to why Fobian says what it says. And the fact is, and the district court I think did a good job of summarizing the law in this area on page 413 of the Eklipsa record. And it starts out with the premise that there's no general right to attorney's fees under the Bankruptcy Code. This I'm quoting from the district court opinion, which in turn there is quoting from Renfro, which in turn is citing the Court Enterprises case in this Court. And, however, a prevailing party in a bankruptcy proceeding may be entitled to an award of attorney's fees in accordance with applicable State law if State law governs the substantive issues raised in the proceedings. That's quoting from Baroff as well, which in turn is citing Johnson. And there's the explanation as to how this works. The Court goes on to say, and he's still quoting Baroff, because State law necessarily controls an action on a contract, a party to an action is entitled to an award of attorney's fees if the contract provides for an award and State law authorizes the shifting agreements. Now comes the important bankruptcy policy. Nevertheless, attorney's fees are not available despite an express contractual provision if the substantive litigation issues raise Federal bankruptcy law issues rather than basic contract enforcement questions. And that's really the key. The Court, of course, is quoting Baroff, but citing to Fobian. And the explanation for this, again, district court, I'm still quoting from the district court, but citing to, sorry, it in turn is quoting Fobian. This is because the question of the applicability of the bankruptcy laws to particular contracts is not a question of the enforceability of a contract, but involves a separate area of Federal law. That's exactly what's going on here. This is not a contract enforcement question under State law. There's no, not only has there been no claim that this is a contract enforcement question, but Travelers has stipulated to the fact that it had no, there was no default by PG&E under any agreement that none of the issues litigated involved anything but Federal bankruptcy law. And there is no allowance for attorney's fees for litigating Federal bankruptcy issues. Now, Travelers does not cite us to one case, either from this jurisdiction, from the Supreme Court, or anywhere else, that would allow for recovery of attorney's fees in a situation like this, a situation where the attorney's fees were incurred purely with respect to litigating bankruptcy matters, and recovery is sought by a party who has not defaulted on or breached any obligation to the party that's seeking to recover the fees. And there's certainly no decision that would allow for that in the case of a party that's not even the prevailing party. So, in fact — This whole Fobian line of cases stemmed just from the American rule that there are no attorney's fees, basically, unless it's bad faith or the statute provides? Is that basically it? That is the basic theory behind it. And, in fact, Johnson, which is, I think, the precursor to Fobian, relies on the so-called American rule to get to that line of authority. I think there is also a policy reason here, which is the — I think the Court alluded to it earlier in the DeRoche argument, which is that if things were differently, if creditors could come in and essentially all claim attorney's fees, win or lose, in mitigating issues in bankruptcy, those attorney's fee claims would essentially overwhelm the bankruptcy of State. So the starting point is what the source of recovery is on the attorney's fees. If there's no State law source of recovery, because there's nothing as a matter of contractual or State law that's argued here that would allow for recovery of bankruptcy-related fees, then the next thing to look to is whether there's any Federal law allowance of such fees. I don't see Nolan as intervening law, but assuming it was decided on a different date than it were, how is Nolan distinguishable? Well, just to be clear, Nolan and its companion case CFI were decided in 1996, and as the Court correctly opined earlier, there were two subsequent Ninth Circuit cases in the Fobian line, both the Renfro case from 2000 and the Thrifty Oil Company case from 2003, both cited in our briefs. Those cases involved totally unrelated issues. What they involved was equitable subordination of claims under Bankruptcy Code Section 510C, which is not disallowance of claims under Section 502. And all those cases say is that a bankruptcy court cannot categorically subordinate claims, in this case claims of a government taxing authority. It needs to examine the subordination question on a case-by-case basis. Now, even engaging in, for the moment, in somehow the belief that those cases are applicable by analogy, the whole structure of Section 502, as we point out in our papers, is completely different. 502B does allow for categorical disallowance of various claims on various grounds. It disallows all claims for unmatured interest. It disallows all claims for lease rejection above a certain threshold. It disallows all claims for a ---- But those are statutory disallowances. Right. It's not a statutory disallowance. Well, it is in that the ultimate statutory source is the very broad language in 502B1, which disallows claims that are not enforceable under applicable law or contract. And that's in here. The applicable law, of course, is the Fobian line of cases. But unlike the Nolan and CFI cases, this ---- the bankruptcy cases that say no recovery of attorney's fees litigating bankruptcy matters are not categorical. They're decided on a case-by-case basis. Renfroe instructs the Court, and there's several cases in the Fobian line, and instructs the Bankruptcy Court to go through an analysis and determine specifically which attorney's fees were incurred in litigating bankruptcy matters not recoverable and which attorney's fees were incurred in litigating State law matters which are recoverable. So I just want to point out, security mortgage couldn't be more inopposite, which is the main case that Travelers relies upon. First of all, it's an 18 ---- it's a 1928 case that relies on a distant cousin of the Bankruptcy Code, the 1898 Bankruptcy Act, which is a few versions back. Both the Bankruptcy Court and district court determined it has no relevance here. In fact, it's solely limited to the issue of an oversecured creditor's right to recover reasonable attorney's fees. That issue, of course, is now dealt with in the present Bankruptcy Code under Section 506B. And as this Court has pointed out, in a case that's directly ---- the whole thing is directly contrary to the proposition for which Travelers cites it for. That's the Sanson Investment Company v. 268 limited case reported at 789 Fed Second 674. This Court, in that case, ruled that Section 506B, which is the section that allows attorneys' fees to oversecured creditors, preempts State law governing the availability of attorney's fees as part of a secured claim. So the argument that that case can be cited for the proposition that Travelers gets attorney's fees as a matter of State law is just flatly wrong. And in fact, this Court, in explaining how these cases fit together in a court enterprises case, which is reported at 139 Fed Third 684, said that, quote, there is no Federal statutory provisions comparable to Section 506B that grants attorney's fees to undersecured creditors. So there, this Court likewise recognized, quote, that there is no general right to attorney's fees under the Bankruptcy Code. Section 506B carves out an exception to that general rule for oversecured creditors. But the point is, as a matter of general law, general bankruptcy law, the only creditors that get attorney's fees in litigating bankruptcy issues potentially are oversecured creditors. There's no authority from any jurisdiction that would permit attorney's fees for litigating bankruptcy issues to an unsecured creditor, particularly in a case where the unsecured creditor does not claim any defaults by the debtor or any or did not prevail in the litigation below. Let me ask you one question before on a slightly different topic. I think the Bankruptcy Court didn't reach this, but do you contest their right to attorney's fees under the agreement at all under these circumstances, absent bankruptcy? In other words, they claim that if they incur attorney's fees for whatever reason that they're entitled to, even frivolous, they're entitled to indemnity under the agreement. Do you contest that? We do contest that. And I would cite you to page 36 of our brief, where we point out not only do we contest that, but both lower courts agreed with us on that point. Now, I will just cite you to one page of the excerpts of record, which is page 396, in which the district court, quote, said, The measures employed by travelers cannot be considered an action on the contractor bonds. Now, keeping in mind that the attorney fee provision the traveler is arguing under is a provision that says it's seek to recover attorney's fees, quote, in enforcing by litigation or otherwise any of the agreements contained in the indemnity agreement. So the attorney fee provision itself requires recovery with respect to enforcing agreements under the actual indemnity agreement. The lower courts both found that there was no dollars were spent with respect to such matters. All right. Thank you, counsel. Judge Thomas, I think you were correct in observing that the lower court did not lower courts did not construe the contracts nor reach the issue. It was that would involve contested questions of fact, which obviously this Court can't resolve. That would have to be remanded if we get to that point. Judge Rustani, I think that in addition to the O'Melveny case and the C.F. and I. Nolan case, we also have to take account of the Supreme Court's decision in 2000 in the Raleigh case. The issue there was whether a Federal court could create a common law rule on burden of proof in bankruptcy. And the Supreme Court said, no, you can't create these Federal common law rules. The Fobian case is unequivocally a Federal common law rule. If you combine C.F. and I. Excuse me for a second. There's no statutory right to fees under the Code. But that's the whole point. Well, I mean, so the equitable subordination cases are quite different because, in fact, one could argue that, well, that they were trying to add some material to the Code that wasn't there. Here there's no rule of allowance. Yes, there is, Your Honor. 502B says expressly, a claim shall be allowed, unequivocally, mandatory, unless, and it lists the grounds for disallowance. Fobian is unequivocally a common law rule which has been inserted into Section 502. It's not based on the Code. There's no 502 case in the Supreme Court on this. You'd have to concede that. Correct, Your Honor. But as noted in the most recent edition of Collier on page 506-118, other courts of appeals have taken the exact opposite view of Fobian. In fact, the Fourth Circuit has said Fobian is wrong. It inverts the analysis. It's not a question, and this is what the Supreme Court made plain in Raleigh in 2000, you don't start from the proposition that Federal law needs to authorize the attorney's fees. You see whether or not Federal law disallows the claim for attorney's fees. That's how the Bankruptcy Code works. And that's the mode of analysis the Supreme Court explained in Raleigh. The whole process of creating a Federal common law rule and saying the Bankruptcy Code must authorize the allocation of attorney's fees is exactly the analysis the Supreme Court has rejected over and over and over again. In O'Melveny, the Supreme Court said the fact under FIREA that there are specific provisions which disallow certain things means that Congress didn't allow or didn't want courts to create gap-filling measures in the other parts of the statute where they're not there. The Supreme Court said the existence of these specific rules demolishes, if I can use Justice Scalia's exact words, the argument that we can create gap-filling rules. The same thing here. Congress was specific in Section 506B for providing a rule about the reasonableness of attorney's fees for secured claims. The fact that Congress provided a specific rule under 506B applicable to attorney's fees means it didn't intend for other rules to apply, other rules of disallowance or supervening rules, because it didn't provide for them. The Supreme Court's method of statutory interpretation over and over again under the Bankruptcy Code and other similar regulatory schemes as Federal courts do not create these common law rules. They can't. Raleigh is specific in rejecting a Federal common law rule, judicially created rule about burden of proof. The O'Melveny case is specific about rejecting a Federal common law rule to fill the gaps under FIREA. The same analysis applies here. Now, I think we have a waiver problem on PG&E's argument that we didn't raise the Siegel argument in the court below. We did, but more importantly, in their brief, they did not contest that we didn't waive it below. So any argument that they might want to make now that we didn't waive, that we somehow waived Siegel is waived. If you look at page 50 to 53 of their brief, nowhere do they say we didn't waive or we didn't raise it below. And, in fact, I think, I believe, since I've been involved as counsel all the way along, that we, in fact, did. If there are no further questions, I think that the Court should reverse. The Court should decline to follow Fobian. Under Miller, this Court has the authority to do it. The Fobian rule is completely contrary to the supervening Supreme Court precedent in Raleigh. It's contrary to the analysis in O'Melveny. It violates CF&I and Noland. It isn't based on anything. It's simply a creature of common law and should not be followed by this Court. Thank you, counsel. Thank you, Your Honor. The case here will be submitted.
judges: Reinhardt, Thomas, Restani